******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* TROY JACKSON
(AC 36790)

Lavine, Beach and Mihalakos, Js.

*Argued April 6—officially released September 15, 2015*

(Appeal from Superior Court, judicial district of New Haven, B. Fischer, J.)

*Adele V. Patterson*, senior assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Stacey M. Miranda*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Troy Jackson, appeals from the judgment of conviction, rendered following a jury trial, of murder in violation of General Statutes § 53a-54a.[1] On appeal, the defendant claims that the trial court improperly failed to give certain special credibility instructions. Specifically, the defendant claims that based upon evidence elicited at trial, the court should have instructed the jury on the credibility of jailhouse informant testimony and accomplice testimony. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On the evening of June 4, 2007, the victim, Julian Ellis, was standing with Sterling Cole on the corner of Lloyd and Exchange Streets in New Haven. The defendant approached the victim along with several unidentified individuals, including Nicholas Newton, and asked whether the victim was dealing drugs in the defendant's territory. After a short exchange, the victim fled. As he ran, the defendant shot him in the back multiple times, resulting in his death.

The defendant was subsequently arrested and charged in a long form information with murder in violation of § 53a-54a (a), criminal possession of a firearm in violation of General Statutes § 53a-217, and carrying a pistol or revolver without a permit in violation of General Statutes § 29-35. The defendant elected a jury trial on the murder charge and a court trial on the firearms charges. Following the presentation of evidence, the jury found the defendant guilty of murder and the court found the defendant guilty of the remaining charges. The court sentenced the defendant to a total effective term of sixty years incarceration. The defendant then filed the present appeal.

On appeal, the defendant claims that (1) the interests of justice required the trial court to give a special credibility instruction regarding the testimony of Newton, and (2) the trial court committed plain error when it failed to give a special accomplice credibility instruction as to the testimony of Cole and Newton. We disagree. Additional facts will be set forth where necessary.

I

As to his first claim, the defendant argues that this court should invoke its supervisory powers to require trial courts to give a special credibility instruction when an incarcerated witness receives a benefit from the state in exchange for testimony regarding a crime that he claims he personally observed prior to his incarceration. We disagree.

The following additional facts are necessary to resolve this claim. In 2010, Newton made a statement

to the police that he was present during the shooting and that the defendant was the shooter. Newton recanted his identification of the defendant while testifying at trial. Newton maintained that he was present at the shooting and recounted significant details regarding the shooting. The state then read a redacted version of Newton's prior signed statement to the jury and submitted photographs signed by Newton in 2010, identifying the defendant as the shooter. Newton further testified that he was incarcerated on an unrelated charge both at the time of trial and when he gave the statement, and that he gave the prior statement and was testifying in exchange for a reduced sentence. The defendant did not request a special credibility instruction. See discussion of charging conference in part II of this opinion.

The court may utilize its supervisory power "to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) *State* v. *Rose*, 305 Conn. 594, 607, 46 A.3d 146 (2012). "[O]ur supervisory authority [however] is not a form of free-floating justice, untethered to legal principle. . . . [T]he integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. . . . [O]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) *State* v. *Kuncik*, 141 Conn. App. 288, 292–93, 61 A.3d 561, cert. denied, 308 Conn. 936, 66 A.3d 498 (2013).

In *State* v. *Patterson*, 276 Conn. 452, 469–70, 886 A.2d 777 (2005), our Supreme Court required that a special credibility instruction be given when a jailhouse informant testified regarding a confession he overheard while incarcerated in exchange for benefits from the state. In *State* v. *Diaz*, 302 Conn. 93, 111–14, 25 A.3d 594 (2011), however, it held that no special instruction was required for eyewitness testimony by an incarcerated individual. The court stated that "when a witness testifies about events surrounding the crime that the witness observed, the testimony can be compared with the testimony of other witnesses about those events, and the ability of the witness to observe and remember the events can be tested. Accordingly, cross-examination and argument by counsel are far more likely to be adequate tools for exposing the truth in these cases than in cases involving jailhouse confessions." Id., 110.

As stated previously, in *Diaz*, our Supreme Court declined to extend the general rule from *Patterson* to cases in which the witness testified regarding his own observations of the circumstances surrounding the crime. We are bound by the decision of our Supreme

Court in *Diaz*. Newton was subject to cross-examination, and his testimony was corroborated by other evidence including Cole's testimony, a video showing men walking up to the victim and the victim running, evidence discovered by the crime scene investigation regarding bullet fragments and the caliber of the gun used, the medical examination demonstrating that the victim was shot in the back, and Tequea Landy's testimony that she heard gunshots and saw the victim stumble into a house after having been shot in the back. The jury had the same "adequate tools for exposing the truth" at its disposal that the court referenced in *State v. Diaz*, supra, 302 Conn. 110.

This case does not present one of those rare circumstances that would require us to utilize our supervisory powers.[2] We therefore decline to require a special instruction in these circumstances.

## II

The defendant's second claim is that the court committed plain error when it failed to give a special accomplice credibility instruction as to the testimony of Cole and Newton. Specifically, the defendant argues that there was sufficient evidence produced at trial that both Cole and Newton met the requisite threshold to require an accomplice instruction. We disagree and conclude that the defendant has waived this claim and cannot prevail on his claim that the court committed plain error.

The following additional facts are necessary to resolve this claim. On the last day of trial, December 3, 2012, the court stated that it held a charging conference with counsel on the prior Friday, November 30, 2012, and provided them with a copy of its proposed charge. The parties, therefore, had from November 30, 2012, through December 3, 2012, to review the charge. On December 3, 2012, the court noted that there was one "issue concerning inconsistent statements that counsel were going to work on together for impeachment purposes." The attorneys had come to an agreement regarding that language, which the court inserted into its charge. The court then inquired whether there were any additional issues. The state stated that it had none; the defendant stated that he now concurred with the court's interpretation of *Apprendi*.[3]

Following closing arguments and prior to instructing the jury, the court inquired whether there were any exceptions a second time, noting that it had made a change requested by defense counsel and that the defendant had had appropriate time to review the charge. Defense counsel confirmed that he had no exceptions, stating: "No, Your Honor. I agree I have had an opportune time. Thank you." After instructing the jury, the court once more confirmed that neither attorney had any exceptions. While the jury was deliberating, the

state briefly discussed the court's instructions on inconsistent statements, impeachment, and the introduction of statements pursuant to *State* v. *Whelan*, 200 Conn. 743, 750, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), but at no point was accomplice testimony mentioned. Defense counsel stated that he had nothing to say.

In *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011), our Supreme Court delineated the standard whereby a claim of instructional plain error may be waived: "[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." "Actual discussion of the instruction later challenged is not required. . . . [C]ounsel has the authority to waive such a right and . . . the court can rely on counsel's representations regarding the propriety of the instructions . . . ." *State* v. *Mungroo*, 299 Conn. 667, 676–77, 11 A.3d 132 (2011).

"[T]he finding of a valid waiver precludes a finding that a jury instruction constitutes plain error because a valid waiver means that there is no error to correct." *State* v. *Kitchens*, supra, 299 Conn. 474 n.18. As our Supreme Court explained in *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 70–71, 967 A.2d 41 (2009), "[the] [p]lain [e]rror [r]ule may only be invoked in instances of forfeited-but-reversible error . . . and cannot be used for the purpose of revoking an otherwise valid waiver. This is so because if there has been a valid waiver, there is no error for us to correct. . . . The distinction between a forfeiture of a right (to which the [p]lain [e]rror [r]ule may be applied) and a waiver of that right (to which the [p]lain [e]rror [r]ule cannot be applied) is that [w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.)[4]

This court held claims of instructional plain error were waived in *State* v. *McClain*, 154 Conn. App. 281, 293, 105 A.3d 924 (2014), *State* v. *Reddick*, 153 Conn. App. 69, 82, 100 A.3d 439, appeal dismissed, 314 Conn. 934, 102 A.3d 85, cert. denied, 315 Conn. 904, 104 A.3d 757 (2014), and *State* v. *Tozier*, 136 Conn. App. 731, 744–45, 46 A.3d 960, cert. denied, 307 Conn. 925, 55 A.3d 567 (2012). See also *State* v. *Cancel*, 149 Conn. App. 86, 102–103, 87 A.3d 618, cert. denied, 311 Conn. 954, 97 A.3d 985 (2014) (waiver of objection to joinder of cases thwarted plain error review). In *State* v. *Tozier*, supra, 744, "the court provided a written copy of its proposed charge to the parties on August 6, 2010. On

August 10, 2010, the court held a charge conference with the parties and solicited 'comments or requests' from the parties concerning the charge. The defendant's attorney raised an issue concerning the charge and raised questions concerning jury interrogatories, but did not challenge the [instruction challenged on appeal]. Also on that same date, the court delivered a portion of its charge that included the challenged instructions. On August 11, 2010, before concluding its charge, the court, outside the presence of the jury, asked counsel if there were '[a]ny preliminary issues' to address. The defendant's attorney replied, 'No, Your Honor.' After the court concluded its charge, it asked the parties if there were any exceptions, suggested corrections or suggested additions to its charge. The prosecutor stated that there were none, to which the defendant's attorney stated, 'Agreed.' " Therefore, the defendant had waived plain error review of the claimed instructional error. Id., 745.

In the present case, the defendant has waived review of this claim. The record clearly demonstrates that the defendant received a copy of the charge, and received sufficient time to review it. His counsel discussed various legal issues with the court, which were not appealed, and offered changes to the charge, which the court accepted. Counsel affirmatively stated that he had no exceptions on multiple occasions, and confirmed that he had had sufficient time to review the charge. The defendant has waived review of this claim; he, therefore, cannot prevail on his claim that the court committed plain error.

The judgment is affirmed.

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ." The defendant was also convicted, following a trial to the court, of the crimes of criminal possession of a firearm and carrying a pistol without a permit. He has not challenged his conviction of those crimes in this appeal.

[2] The defendant has not argued that the court's failure to give a special credibility instruction was plain error. The Supreme Court's discussion of this issue in *State* v. *Diaz*, supra, 302 Conn. 103–106, would be dispositive on this issue as well.

[3] In *Apprendi* v. *New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi* did not involve special credibility instructions or accomplice testimony; moreover, as noted previously, the defense concurred with the trial court's interpretation of *Apprendi*.

[4] The distinction between waiver and forfeiture demonstrates why *State* v. *Jamison*, 152 Conn. App. 753, 99 A.3d 1273, cert. granted, 314 Conn. 943, 102 A.3d 1117 (2014), is inapposite on the issue of waiver. In *Jamison*, while the defendant failed to preserve the claim of instructional error; id., 760; the court did not consider whether the defendant had waived it. The court did not consider the nature of the charging conference, whether the defendant received a copy of the court's instructions, and whether the defendant affirmatively stated that he had no objections. The issue of waiver was, therefore, never before the court.